IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS RETAILERS ASSOCIATION, § § Plaintiff, § § v. § § UNITED STATES DEPARTMENT § OF AGRICULTURE, § § Defendant. § | Civil Action No. 01:18-CV-659-DAE |

# TEXAS RETAILERS ASSOCIATION'S
# MOTION FOR PRELIMINARY INJUNCTION

Vinson & Elkins L.L.P.

Jason M. Powers
Texas Bar No. 24007867
Allison L. Fuller
Texas Bar No. 24087547
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

Jennifer S. Freel
Texas Bar No. 24051327
2801 Via Fortuna
Suite 100
Austin, TX 78746

*Attorneys for Plaintiff*
*Texas Retailers Association*

Pursuant to Rule 65, FED. R. CIV. P., Plaintiff Texas Retailers Association ("TRA") hereby moves for a preliminary injunction to prevent the United States Department of Agriculture ("USDA") from releasing the confidential store-level Supplemental Nutrition Assistance Program ("SNAP") redemption data of Texas-based SNAP retailers ("Confidential Information").[1]

## INTRODUCTION

SNAP, the federal food-assistance program that serves 3.7 million Texans, is in the midst of a historic transformation. Until this year, SNAP recipients could redeem their benefits only at brick-and-mortar retailers, not online. Now, however, SNAP recipients in some states can purchase SNAP-eligible products online for delivery directly to their homes. For the moment, this online pilot program is available through a handful of retailers in a few states, but USDA expects to take the program nationwide soon. The agency and the industry both understand SNAP redemptions will represent a significant market for online retailers.

This case involves the potential release of brick-and-mortar retailers' sensitive, store-level sales data, giving online retailers an immediate and unfair advantage over the traditional retailers that have served SNAP recipients in Texas for decades. USDA decided to release this data based on a November 2016 decision in a case filed against USDA by a South Dakota newspaper. In that case, the South Dakota court ruled that store-level redemption data from 2005–2010 was not subject to the Freedom of Information Act's ("FOIA") Exemption 4, protecting confidential business information. 5 U.S.C. § 552(b)(4). But, the South Dakota court

---

[1] TRA's proposed Preliminary Injunction is attached as Exhibit 1. This motion is supported by the Declarations of Martin Otto (Ex. 2), Jason Cooper (Ex. 3), Luke Gustafson (Ex. 4), Skylar Thompson (Ex. 5), Donald Benefield (Ex. 6), Jason Powers (Ex. 7), George Kelemen (Dkt. # 6-6), and Gary Huddleston (Dkt. # 6-7), the latter two filed in support of TRA's TRO application.

did not address how this data would harm traditional retailers in a SNAP market that included online operators—because USDA never mentioned the historic changes it was planning.

USDA's 2017 administrative decision to release the 2005–2010 SNAP store-level data must be vacated, because USDA did not meet its administrative responsibility to carefully determine whether release of this information would cause substantial competitive harm. USDA cannot rely solely on the South Dakota court's 2016 decision, because the court's decision was based on an analysis of a SNAP market that is fundamentally different than the market that now exists, and USDA did not give the court the relevant information needed to conduct the required analysis. Neither can USDA rely on the South Dakota court's judgment on 2005–2010 data to release later data. USDA's own regulations require it to notify submitters of FOIA requests and of its decisions to release their business information—obligations the agency failed to discharge.

TRA asks this Court to order that, in light of the current market facts, the Confidential Information may not be released. Alternatively, TRA seeks remand of the matter to USDA for agency proceedings to determine whether release of this data will cause substantial competitive harm. If USDA releases the Confidential Information while this case is pending, the harm will be irreparable. Thus, TRA requests that the Court preserve the status quo and its own jurisdiction by entering a preliminary injunction preventing USDA from releasing the store-level SNAP redemption data of Texas-based retailers until final judgment.[2]

## FACTUAL BACKGROUND

In 2011, several years before the online SNAP program was announced, a South Dakota newspaper submitted a FOIA request for various SNAP-related information for the years 2005–

---

[2] On August 8, after a hearing at which counsel for both parties appeared, Judge Yeakel entered a TRO enjoining USDA from releasing the Confidential Information (Dkt. # 8). By this motion, TRA seeks to extend that injunction through final judgment.

2010.  The *Argus Leader* received most of what it requested, but USDA withheld store-level SNAP redemption data.  Unsatisfied, the paper sued.  *Argus Leader Media v. USDA*, 224 F. Supp. 3d 827, 829 (D.S.D. 2016).  In 2014, USDA notified SNAP retailers of the lawsuit and solicited comments on whether release of this data would cause them substantial competitive harm.  The agency received hundreds of comments from retailers and members of the public, but because USDA had not announced any intention to invite online retailers to participate in SNAP, none of the comments discussed the unfairness of giving online SNAP operators access to traditional retailers' historical store-level redemption data.

In May 2016, the case went to trial.  USDA, the sole defendant, argued to preserve the confidentiality of the data.  But the agency never mentioned any online program to the court and never argued that release of the requested data would unfairly benefit SNAP online operators in competition against traditional retailers.  Both sides' presentations focused on the sensitivity of store-level SNAP redemption data in a market comprised only of brick-and-mortar retailers.  One USDA witness testified "that injecting new sales information into the public domain could impact stores because competitors could target high dollar SNAP locations and build new stores in that area." *Id.* at 830.  Another USDA witness lamented that "landlords would not renew their lease agreements if the data showed that [a retailer's] stores had high SNAP sales." *Id.*  USDA's expert witness testified that "grocery stores use model forecasts to determine whether to add locations and that releasing SNAP data could improve the accuracy of these models." *Id.* at 831.  Similarly, the *Argus Leader*'s analytics expert opined that "individual retailer SNAP data would not likely play a significant role in helping businesses decide where to locate stores." *Id.*

In November 2016, the district court issued its decision.  The court acknowledged that "[c]ompetition in the grocery business is fierce," but found that the prospect of substantial

competitive harm resulting from the release of SNAP redemption data was speculative. *Id.* at 833, 835. As with the testimony of both sides' witnesses, the court's analysis presupposed a brick-and-mortar market in which "competition" largely equated with the opening of new stores:

> For example, although a high volume of SNAP sales might encourage a competitor to enter that *geographical market*, an equally compelling conclusion is that SNAP sales will have no or little effect on a store's decision to *expand into new sites*. This is because a variety of factors influence a store's decision to open a *new location* including: *costs of real estate, location of real estate*, the business's long-term financial plan and goals, and other factors.

*Id.* at 834 (emphasis added). The court naturally never considered the harm of giving traditional retailers' sales data to online SNAP retailers, which could compete without opening new stores.

What the district court in South Dakota was not told was that USDA was preparing to take SNAP redemption online. In September 2016, USDA solicited volunteers to participate in the online pilot program, recognizing that "many online sites have come to recognize that SNAP customers represent a significant market." Ex. 9 at 4. On January 5, 2017, USDA announced that it had selected seven firms to participate in a two-year pilot program in which SNAP recipients would be able to purchase their groceries online. Ex. 10. USDA stated that "[e]ventually, our goal is for this to be a national option for SNAP participants, once the pilot phase is complete and USDA can incorporate lessons learned into program rules." *Id.* In October 2017, USDA announced that the pilot program would launch in 2018. Ex. 11.

USDA did not inform the district court that the evidence it had heard during the May 2016 trial was stale due to the agency's subsequent introduction of an online pilot program and its plans to take that program nationwide. Instead, in the midst of a post-election presidential transition, the agency disengaged. On January 18, 2017, USDA announced that the agency would release data purportedly to "comply with the [South Dakota] court ruling." *See* Ex. 12. A national industry association, the Food Marketing Institute ("FMI"), intervened in the case, but

4

only to pursue an appeal of the judgment after USDA decided not to litigate the matter any further.  *See Argus Leader Media v. USDA*, 889 F.3d 914, 916 (8th Cir. 2018).  Applying clear-error standard of review, the Eighth Circuit affirmed.  *Id.* at 916–17.  Issuance of the mandate has been stayed until August 21, while the Supreme Court considers a stay pending FMI's cert petition.  *See* Ex. 13.

TRA has now learned of subsequent FOIA requests for store-level SNAP redemption data for 2011–present.  USDA neither notified retailers of these requests nor solicited comments regarding the competitive sensitivity of the new data.  USDA appears to have decided to release all SNAP store-level data from 2005 to the present based solely on the South Dakota court's determination of how competitively sensitive *some* of this data would be in a market that included *only* brick-and-mortar retailers.  TRA intends to amend its Complaint to seek relief barring USDA from releasing Texas retailers' 2005–present store-level SNAP redemption data.

## ARGUMENT

To obtain a preliminary injunction, TRA must show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted).  No factor "has a fixed quantitative value.  Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Texas v. Seatrain Int'l*, 518 F.2d 175, 180 (5th Cir. 1975).

A.   **Substantial Likelihood of Success on the Merits**

To establish a substantial likelihood of success on the merits, "the plaintiff must present a *prima facie* case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).  The inquiry

focuses solely on the substantive merits of the claim, not on any potential procedural obstacles. *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011).  TRA has satisfied this *prima facie* burden.

FOIA's Exemption 4 protects "confidential" information an agency has obtained from a business, specifically information the release of which would likely cause "substantial harm" to the business's competitive position.  5 U.S.C. § 552(b)(4); *Cont'l Oil Co. v. Fed. Power Comm'n*, 519 F.2d 31, 35 (5th Cir. 1975).  The business need not show absolute certainty that release would cause actual competitive harm.  *Gov't Accountability Project v. HHS*, 691 F. Supp. 2d 170, 175 (D.D.C. 2010) ("[T]he court need not conduct a sophisticated economic analysis of the likely effects of disclosure.").  A basic showing of "actual competition and the likelihood of substantial competitive injury" is sufficient.  *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983).  If a business "succeeds in demonstrating that its materials fall within Exemption 4, the government is precluded from releasing the information by virtue of the Trade Secrets Act[, 18 U.S.C. § 1905]." *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995).  Thus, if TRA shows this data is subject to Exemption 4, its release would be an "abuse of discretion" and "not in accordance with the law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

Before releasing store-level SNAP data, USDA was required to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Jurewicz v. USDA*, 741 F.3d 1326, 1331 (D.C. Cir. 2014).  That inquiry must be "searching and careful." *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1409 (5th Cir. 1987).  An administrative decision should not be upheld where the agency "has considered impermissible factors, failed to consider important aspects of the

problem, [or has] offered an explanation for its decision that is contrary to the record evidence." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 824 (5th Cir. 2006).

An agency's Exemption 4 analysis is an inherently fact-intensive inquiry that must take into account actual market conditions. Information may be subject to Exemption 4 under certain market conditions but not others. *Boeing Co. v. U.S. Dep't of Air Force*, 616 F. Supp. 2d 40, 45 (D.D.C. 2009) ("Courts may not impose a *per se* rule that in all cases prohibits or requires the release of one particular type of information."). Where the relevant "market" is a government program, agency actions can alter the competitive landscape of the market and thus influence the competitive sensitivity of information. *See, e.g.*, *McDonnell Douglas Corp. v. U.S. Dep't of Air Force*, 375 F.3d 1182, 1188 (D.C. Cir. 2004) (holding that submitter would suffer substantial competitive harm by release of information if the agency chose to rebid a contract).

That is precisely what happened here. USDA is in the process of fundamentally changing the SNAP marketplace, so that it now includes online operators and will likely soon include many more. As Martin Otto of H-E-B explains, this agency-driven change puts traditional retailers at a distinct competitive disadvantage against online operators if store-level SNAP redemption data is released. *See* Otto Decl. ¶¶ 9–16. Online operators will leverage this sales data to target traditional retailers' customers through sophisticated data analytics, while online operators will not be forced to share any geographically-precise SNAP redemption data. *Id.* ¶¶ 10–16. Executives from other retailers echo these concerns, as does industry veteran Gary Huddleston. *See* Cooper Decl. ¶¶ 16–18; Gustafson Decl. ¶¶ 14–15; Huddleston Decl. ¶¶ 12–13.

Exemption 4 was designed to prevent this type of harm. *See Biles v. Dep't of Health & Human Servs.*, 931 F. Supp. 2d 211, 224 (D.D.C. 2013) ("[T]he 'harm' aspect of 'competitive harm' is an *unfair* commercial disadvantage by way of exposure."). USDA has not considered

the harm retailers will face in this new "significant market" when it releases retailer data, and neither did the South Dakota court. The evidence shows, and will show at trial, that in today's market Exemption 4 applies to store-level SNAP data.

The South Dakota court's 2016 decision does not compel a contrary conclusion. First, retailers were not parties in that lawsuit. Through final judgment, the sole defendant was USDA. Another trade association, FMI, intervened after final judgment, but FMI's intervention was for the sole purpose of filing an appeal after USDA decided that it would not do so. *Argus*, 889 F.3d at 916. FMI did not participate in the May 2016 trial, in which USDA introduced its limited competitive harm evidence. And, USDA did not announce its intention to abandon the case until after the deadline for filing a motion for new trial had already passed. *See* FED. R. CIV. P. 59(b). In short, FMI was stuck with the faulty record that USDA had already developed.

Moreover, the issue USDA litigated in South Dakota and the factual record on which that issue was litigated were different than in this case. *See Whole Woman v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) ("[D]evelopment of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim."). The South Dakota court was never informed of the online pilot program and thus could not consider whether release of the 2005–2010 data would harm traditional SNAP retailers competing with online operators. It would be unfair to hold that Texas retailers are bound by a decision in a South Dakota case in which they did not appear and that did not address the changed market conditions.

Moreover, USDA's prospective release of post-2010 data violates its own administrative regulations for processing FOIA requests. Under those regulations, USDA must "[p]rovide the business information submitter with prompt notification of a request for that information" and afford it "reasonable time in which to object to the disclosure of any specified portion of the

8

information." 7 C.F.R. § 1.12(a). The only exception applies when "it is readily determined by the agency that the information requested … is not exempt by law from disclosure." *Id.* But, as discussed above, this exception does not apply. USDA has not produced any administrative decision to show that it considered the competitive harm that release of post-2010 data would have on traditional retailers in the new SNAP market.[3] And, SNAP retailers were denied the opportunity to comment on these new market dynamics because USDA failed to notify them that this newer data had been requested. Nor can the agency rely on the South Dakota decision. In addition to not having considered the online marketplace, the South Dakota court's order does not apply to post-2010 data, as the *Argus Leader* only sued to obtain 2005–2010 data.

This case presents a legal issue and factual circumstances not considered by the South Dakota court. Because USDA did not inform that court of the "significant market" competition it was creating, the court's competitive-harm analysis was incomplete. USDA cannot rely on that decision to release the Confidential Information, nor does that court's decision bind this Court or Texas retailers. TRA has therefore established a *prima facie* case that this Court must consider Exemption 4 anew or remand the matter to USDA so that it can conduct the analysis based on the SNAP market that actually exists today and that will likely exist in the near future.

**B.     Irreparable Harm**

TRA members will suffer irreparable harm if injunctive relief is not granted. USDA announced in January 2017 that it would be releasing the Confidential Information. That release has been stayed in the South Dakota litigation until at least August 21, pending further order by the Supreme Court. If that stay is not extended, Texas retailers' data will be subject to imminent

---

[3] Because TRA members were kept in the dark about these additional FOIA requests, TRA intends to seek discovery from USDA to learn the precise number and scope of the requests and the extent of USDA's administrative proceedings (if any) relating to those requests.

9

public release and TRA will be unable to argue that this data is covered by Exemption 4. *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987).

C.  **Balance of the Equities**

The balance of equities weighs in favor of TRA. Texas retailers will be immediately and irreparably harmed by the release of the Confidential Information, but USDA will not suffer any harm by continuing to withhold the information pending this Court's review. Indeed, USDA has never released such detailed store-level data before. Nor will the *Argus Leader* or other FOIA requestors suffer significant harm from maintaining the status quo. USDA can release the data of retailers outside Texas and the aggregated SNAP data it has always published.

D.  **Public Interest**

While TRA acknowledges the public has a general interest in knowing how federal funds are spent, that transparency interest is served in the status quo and will continue being served, regardless of this case. TRA seeks only to protect sensitive individual-store-level data, not USDA's data on SNAP redemptions at the national, state, or ZIP code level. Moreover, there is a compelling public interest in protecting existing SNAP retailers in Texas from unfair competitive harm, as these traditional retailers serve SNAP recipients and their local communities by ensuring that residents are not forced to redeem their benefits at outlets that lack a full range of healthy SNAP-eligible products. Kelemen Decl. ¶ 6; Otto Decl. ¶ 11.

**PRAYER FOR RELIEF**

Plaintiff TRA requests the Court enter a Preliminary Injunction, in the form of the proposed order attached to this Motion as Exhibit 1, prohibiting USDA from releasing the Confidential Information. TRA requests such further relief as the Court finds just and proper.

                      Respectfully submitted,

                      VINSON & ELKINS L.L.P.

                      */s/ Jason M. Powers*
                      Jason M. Powers
                      Texas Bar No. 24007867
                      Allison L. Fuller
                      Texas Bar No. 24087547
                      1001 Fannin Street, Suite 2500
                      Houston, Texas 77002-6760

                      Jennifer S. Freel
                      Texas Bar No. 24051327
                      2801 Via Fortuna
                      Suite 100
                      Austin, TX 78746

                      ***Attorneys for Plaintiff***
                      ***Texas Retailers Association***

## **CERTIFICATE OF CONFERENCE**

      Attorneys for TRA and attorneys for USDA have engaged in good faith discussions by email and phone calls about whether the parties could agree to a Preliminary Injunction covering the store-level redemption data until the time of trial. Those communications began prior to the Court's conference on the application for temporary restraining order and have continued through today, August 14, 2018. At this time, those discussions have not resulted in an agreement, but discussions remain ongoing. TRA will apprise the court of any developments.

                      */s/ Jason M. Powers*
                      Jason M. Powers

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th day of August, 2018, a true and correct copy of the foregoing document was tendered for filing to the Clerk of the U.S. District Court for the Western District of Texas using the Court's CM/ECF system.

                      */s/ Jason M. Powers*
                      Jason M. Powers