IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS RETAILERS ASSOCIATION | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 1:18-cv-659-DAE |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | § § § § | |
| *Defendant*. | § § | |

**DEFENDANT UNITED STATES DEPARTMENT OF AGRICULTURE'S RESPONSE
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW Defendant United States Department of Agriculture ("USDA") and requests that this Court deny, in part, Plaintiff Texas Retailers' Association's ("TRA") Motion for Preliminary Injunction. (Dkt 14). Plaintiff's request encompasses two distinct categories of documents: (1) those documents that were the subject of litigation in the U.S. District Court for the District of South Dakota, the U.S. Court of Appeals for the Eighth Circuit, and, presently, the United States Supreme Court in *Argus Leader Media v. United States Dep't of Agric.*, 889 F.3d 914 (8th Cir. 2018);[1] and (2) all other USDA records containing store-level SNAP redemption data for retailers in the State of Texas, where those records have been requested under a Freedom of Information Act ("FOIA") but which are not part of the *Argus Leader* case.  Defendant, for the

---

[1] The FOIA request in that case sought all documents containing store-level SNAP redemption data for fiscal years 2005 through 2010, including data pertaining to retailers in Texas and retailers outside of Texas. The first category involves a subset of the documents at issue in *Argus Leader* and comprises documents that contain store-level SNAP redemption data for retailers in Texas for fiscal years 2005 to 2010.

1

reasons contained herein, opposes Plaintiff's motion for a Preliminary Injunction covering the first category of documents but does not oppose Plaintiff's motion for a Preliminary Injunction covering the second category of documents for the limited period until such time as the Court rules on the respective motions for summary judgment or motions to dismiss in this case.

## I.  BACKGROUND

On February 1, 2011, *Argus Leader*, a Sioux Falls, South Dakota newspaper submitted to USDA a Freedom of Information Act (FOIA) request seeking store identifier numbers, store names, store addresses, store types, and annual redemption amounts from individual retail stores participating in the Supplemental Nutrition Assistance Program (SNAP) from fiscal years 2005-2010.[2] USDA disclosed only the store types, and the names and addresses of participating retailers, and withheld all other information, including annual redemption amounts.

USDA asserted that the redemption data was exempt from disclosure under FOIA Exemption 3, which protects information from release when Congress has prohibited disclosure in a withholding statute. Specifically, USDA cited Section 9(c) of the Food and Nutrition Act, 7 U.S.C. § 2018(c), which requires applicant retailers to submit certain information to FNS in order to be approved as a SNAP-authorized retailer.  The statute exempts from disclosure "information, which may include relevant income and sales tax filing documents, which will permit a

---

[2] Redemption data is the dollar amount of goods that a retailer sells to SNAP beneficiaries and subsequently redeems from the federal government in a given year.  Redemption data is generated only when a retailer processes a SNAP transaction. When a SNAP recipient makes a purchase at an authorized retailer, the recipient swipes his SNAP electronic benefit transfer (EBT) card through the store's point-of-sale device.  That device then communicates with a third-party processor or the EBT vendor that electronically verifies that the customer has a sufficient balance in his SNAP account to cover the purchase.  If the sale is authorized, the EBT vendor deducts the transaction amount from the purchaser's SNAP balance and facilitates payment to the retailer's bank account.  The EBT vendor provides to USDA data on each SNAP transaction, which USDA maintains in an electronic database as the official record of each store's SNAP activity.  USDA monitors redemption data for evidence of fraud by retailers.

determination to be made as to whether such applicant qualifies or continues to qualify" as a participating retailer in the SNAP program.

*Argus Leader* challenged USDA's decision to withhold the redemption data in the District Court of South Dakota. The District Court granted the USDA's motion for summary judgment. *Argus Leader Media v. U.S. Dep't of Agric.*, 900 F. Supp. 2d 997 (D.S.D. 2012), *rev'd and remanded,* 740 F.3d 1172 (8th Cir. 2014). The court concluded that the Food and Nutrition Act, 7 U.S.C. § 2018(c), is a withholding statute, and that redemption data fell under the statute's broad umbrella of "income and tax information." *Id.* at 1008.

On January 28, 2014, a unanimous Eighth Circuit panel reversed. The court concluded that while 7 U.S.C. § 2018(c) is a withholding statute, the redemption data that *Argus Leader* requested was not the type of information that falls within the statute's withholding exemption. The court concluded that because USDA generates retailer redemption data from information obtained from third-party processors, and not directly from SNAP retailers, the spending information "is not 'obtained under the authority granted by' § 2018(c)" and, therefore, is not exempt from disclosure. Second, the panel faulted the district court for finding that redemption data is "income and tax information." The court reversed the district court's decision and remanded.

On remand, the USDA filed a second motion for summary judgment, arguing FOIA exemptions 4 and 6 applied to the release of the data. Exemption 4 protects from mandatory disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). In May 2016, the court conducted a bench trial at which USDA's witnesses testified about the competitive harm that release of the data would have upon retail stores participating in SNAP. USDA's witnesses alleged that competitive harm

could arise from competitors' using SNAP data to open competing stores and to lure customers away from participating retailers, and from the potential stigma that could be associated with being identified as a high-volume SNAP retailer.

On November 30, 2016, the district court entered judgment in favor of *Argus Leader.* The district court rejected the USDA's analysis of the potential for competitive harm as incomplete because it failed to account for factors independent of potential SNAP revenue that could influence business decisions. The court concluded that release of the SNAP data would not provide any significant insights into a grocery store's business, and therefore, would have only a nominal effect on competition in the grocery industry *Argus Leader Media v. United States Dep't of Agric.*, 224 F. Supp. 3d 827, 834 (D.S.D. 2016), *aff'd,* 889 F.3d 914 (8th Cir. 2018). The court concluded that any potential competitive harm from the release of SNAP data is "speculative at best." *Id.* at 834. The court also rejected as irrelevant USDA's argument that competitive harm could arise from the stigma that a SNAP retailer might face if its redemption data were released. The court found that the potential for harm is speculative and would not be caused by a competitor in any event. The court concluded: "[b]ecause of the speculative nature of the USDA's claims and FOIA's preference for transparency and disclosure, this court finds that release of SNAP data will not likely cause substantial competitive harm to SNAP stores. The data should be disclosed." *Id.* at 835

After the district court entered judgment for *Argus Leader*, the government decided not to appeal. Food Marketing Institute ("FMI"), a trade group representing grocery retailers, intervened and filed an appeal. In that appeal, FMI contested the district court's findings of fact and application of law. On May 18, 2018, the Eighth Circuit ruled that, "the contested data—which are nothing more than annual aggregations of SNAP redemptions—lacked the specificity needed to gain

4

material insight into an individual store's financial health, profit margins, inventory, marketing strategies, sales trends, or market share. FMI's assumption that stores would be stigmatized was speculative and not supported by any other evidence in the record. There was also no meaningful evidence that retailers would end their SNAP participation if the contested data were released." *Argus Leader Media*, 889 F.3d at 916. The Eighth Circuit thus affirmed the district court's decision that the requested SNAP data should be disclosed and, on August 7, 2018, issued its mandate.

Meanwhile, on August 6, 2018, Plaintiff filed this action generally alleging that the District Court of South Dakota and the Eighth Circuit's decision in *Argus Leader* was "stale" and this Court should conduct a new analysis in light of what Plaintiff believes to be new market factors. (Dkt 1). On August 8, 2018, Plaintiff's request for a TRO was granted by Judge Yeakel. (Dkt 8). That TRO did not differentiate between documents covered by the Eighth Circuit's decision (which only covers fiscal years 2005-2010) and those not covered by the Eighth Circuit's decision. *Id.*

On August 9, 2018, the Supreme Court issued a recall and temporary stay of the Eighth Circuit's order affirming the South Dakota District Court's ruling that covered the first category of documents described above. (Dkt 14, Attachment 13). Briefing on a stay pending certiorari is ongoing. *Id.*

## II. LAW AND ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction on the documents covered by the Eighth Circuit's mandate in *Argus Leader*, TRA must show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the

injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). TRA's motion, to the extent it attempts to enjoin the USDA from complying with Eighth Circuit's mandate, fails to satisfy all four criteria.

A.  *Likelihood of Success on the Merits*

   i.   USDA's Releasing SNAP Redemption Data from Fiscal Years 2005-2010 Is Proper

The Eighth Circuit has already decided that SNAP redemption data from fiscal years 2005-2010 should be disclosed under FOIA. This case, in spite of TRA's arguments to the contrary, is no different. In the previous case, at a bench trial in which experts on both sides of the issue were called to testify extensively, the district court found that the grocery retail industry was highly competitive but that the USDA had not proved a likelihood of substantial competitive injury. *Argus Leader Media*, 224 F. Supp. 3d at 833–835. The district court further found that claims of competitive injury were "speculative at best" because grocery retailers already had access to large quantities of data about their competitors and existing models explained the majority of grocery customers' behavior. *Id.* at 834. The Eighth Circuit affirmed the district court's findings:

> "[T]he evidence showed that the contested data—which are nothing more than annual aggregations of SNAP redemptions—lacked the specificity needed to gain material insight into an individual store's financial health, profit margins, inventory, marketing strategies, sales trends, or market share.
>
> …
>
> "[T]he grocery industry is highly competitive, but is already rich with publically-available data that market participants (and prospective market entrants) use to model their competitors' sales. The evidence shows that releasing the contested data is likely to make these statistical models marginally more accurate. But the evidence does not support a finding that this marginal improvement in accuracy is likely to cause *substantial* competitive harm. The USDA's evidence showed only that more accurate information would allow grocery retailers to make better

business decisions. If that were enough to invoke Exemption 4, commercial data would be exempt from disclosure any time it might prove useful in a competitive marketplace."

*Argus Leader Media*, 889 F.3d 914.

TRA attempts (Dkt 14 at 6) to stymie USDA's release of this information on the basis that its disclosure would be an "abuse of discretion" and "not in accordance with the law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). But it cannot be unlawful to follow the lawful order of a court of appeals, nor would doing so be an abuse of discretion. TRA's complaint that USDA failed to engage in a searching and careful inquiry before determining to release the information is also plainly incorrect. USDA defended an entire FOIA case, through the first Eighth Circuit appeal and through a two-day bench trial with witnesses and experts, litigating along the way the bases that it had to withhold SNAP redemption data under FOIA Exemption 4. During that litigation, USDA published in the Federal Register a request for information about disclosing SNAP redemption data and considered over 300 comments from retailers and trade associations. 79 Fed. Reg. 45175 (Aug. 4, 2014). TRA's assertion (Dkt 14 at 7) that USDA failed to engage in a "fact-intensive inquiry" is unavailing. And TRA's passing mention (Dkt 14 at 6) of the Trade Secrets Act, 18 U.S.C. § 1905, also does not meet the burden for showing that TRA is entitled to the extraordinary remedy of injunctive relief, because TRA does not explain what information outside the scope of Exemption 4 in this case, as determined by the Eighth Circuit, is also inside the scope of the Trade Secrets Act. *See McDonnell Douglas Corp. v. Windall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995).

    ii.    <u>USDA, TRA, and FMI Were All Aware of Imminent Online SNAP Transactions At The Time of the South Dakota Trial and Eighth Circuit Appeal</u>

TRA argues that USDA's "fundamental change" to the SNAP marketplace—the pilot program to allow SNAP participants to redeem through online grocery retailers—renders the 2016

7

South Dakota decision (and the Eighth Circuit's affirmation) inconsequential. However, "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991). First, the South Dakota district court's decision and the Eighth Circuit's review of that decision was not reliant on a lack of online competition. Rather, as noted above, the district court and the Eighth Circuit's decision acknowledge the possibility of some harm, but found that the highly competitive grocery industry's wide ranging and publically available data would not be fundamentally altered by the release of store-level redemption data. That SNAP may now be redeemed through online retailers does not invalidate the court's reasoning in that case.

Further, TRA, USDA, FMI, and the grocery industry were all aware at the time of the South Dakota bench trial and the Eighth Circuit appeal that online SNAP transactions were on the horizon. In 2014, the Farm Bill mandated USDA conduct a pilot program to test the possibility of allowing retail food stores to accept SNAP benefits through online transactions. *Agricultural Act of 2014*, PL 113-79, February 7, 2014, 128 Stat 649. Plaintiff's sophisticated retail grocery executives cannot claim they lacked notice of the two-year-old law governing their industry before the South Dakota District Court reached its judgment in 2016. Nonetheless, neither TRA nor FMI, their national industry representative, intervened in the *Argus Leader* trial to raise the issue of competition from online retailers. Indeed, even after it intervened, FMI did not raise this issue either in its appeal to the Eighth Circuit or in a motion properly brought in the District of South Dakota under Fed. R. Civ. P. 60(b).

    iii.    <u>Plaintiff Will Not Be Able To Show That "New" Online Redemption Options Are A Sufficient Basis For The Court to Disregard Existing Decision</u>

Plaintiff's case for collaterally attacking the South Dakota trial order rests on the argument that "[d]evelopment of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." (Dkt 14). However, in citing to *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2331 (2016), Plaintiff disregards the framework the Supreme Court used in that case to determine when "changed circumstances" permits re-litigation of a claim. The authority on which the *Whole Woman's Health* opinion primarily relies, Comment *f* to § 24 of the second Restatement of Judgments, states:

> "Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first. Where important human values—such as the lawfulness of a continuing personal disability or restraint—are at stake, even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought." (Citations omitted). [3]

---

[3] Justice Alito writes in the dissent to *Whole Woman's Health*, "[The Restatement] does not say that '[m]aterial operative facts occurring after the decision of an action' always or even usually form 'the basis of a second action not precluded by the first.' Rather, the comment takes the view that this 'may' be so. The question, then, is *when* the development of new material facts should lead to this conclusion. And there are strong reasons to conclude this should be a very narrow exception indeed. Otherwise, this statement, relegated to a mere comment, would revolutionize the rules of claim preclusion—by permitting a party to relitigate a lost claim whenever it obtains better evidence. Comment *f* was surely not meant to upend this fundamental rule.

…

"Section 24 includes three illustrative examples in the form of hypothetical cases … In the first hypothetical case, the subsequent suit is based on new events that provide a basis for relief under a different legal theory.  In the second case, a father who lost a prior child custody case brings a second action challenging his wife's fitness as a mother based on "subsequent experience." This illustration is expressly linked to a determination of a person's "status" … as a parent, that the law recognizes as changeable. In the final example, the government loses a civil antitrust conspiracy case but then brings a second civil antitrust conspiracy case based on new conspiratorial acts. The illustration does not suggest that the legality of acts predating the end of the first case is actionable in the second case, only that the subsequent acts give rise to a new claim and that proof of earlier acts may be admitted as evidence to explain the significance of the later acts." (citations omitted).

Not only does *Whole Women's Health* only stand on exceedingly narrow "changed circumstances" rules but, as noted above, Plaintiff will have a difficult time arguing changed circumstances at all.

  iv.  <u>Claim and Issue Preclusion Will Prevent Plaintiff From Relitigating What Has Already Been Ordered by the District Court of South Dakota and the Eighth Circuit</u>

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).[4] Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* at 748–749. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154 (1979).

"The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The party asserting that res judicata applies has the burden of proving that preclusion is appropriate. *See Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986). Privity is

---

[4] "Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77, n. 1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)).

where "the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266–67 (5th Cir. 1990). The Fifth Circuit maintains that privity may be found only in three narrow situations: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.*

TRA has failed to carry its burden of demonstrating that: (1) Plaintiff's interests were adequately represented by a party to the original suit – both at the district court level and at the Eighth Circuit; (2) the District Court of South Dakota and Eighth Circuit Court of Appeals are courts of competent jurisdiction; (3) the Eighth Circuit's mandate stands; and (4) the same claims are at issue—whether store-level SNAP redemption data is covered by Exception 4 to FOIA.

B.     *Irreparable Harm*

Plaintiff's argument regarding the irreparable harm it would suffer should the USDA comply with the Eight Circuit's mandate is predicated on their affidavits which all allege that Texas demographics are sufficiently stable that, using the 2005-2010 data, online retailers would be able to build reliable models of consumer behavior roughly a decade later in 2018. Again, to quote the only Court which has sat a neutral factfinder between experts arguing both sides of this exact issue, "[t]he evidence showed that the contested data—which are nothing more than annual aggregations of SNAP redemptions—lacked the specificity needed to gain material insight into an individual store's financial health, profit margins, inventory, marketing strategies, sales trends, or market share." *Argus Leader Media*, 224 F. Supp. 3d at 833–835. That court, as affirmed before the Eighth Circuit, held, "the evidence does not support a finding that this marginal improvement in accuracy is likely to cause *substantial* competitive harm." (Emphasis in original).

Even in light of Amazon and other online retailer's imminent entry into the SNAP redemption market, this reasoning holds. Plaintiff's motion presents no evidence that online retailers are better at creating statistical models using 13-year-old data than standard brick-and-mortar competition. Plaintiff does not offer a single instance where an online retailer has referenced data from 13 years ago to change its own competitive behavior. Although Plaintiff laments that the Eighth Circuit's recent decision is "stale," it is the 2005-2010 data itself that is stale. There is no basis for this Court to speculate that such data could have any bearing on the actual, on-the-ground behavior of retailers.

C.     *Injury of Injunction Outweighs Harm from Injunction*

In this case, the injury of injunction far outweighs the harm from injunction. An injunction by this court would force the government to potentially disregard a fellow district court's trial order and the Eighth Circuit's mandate. On the other hand, the injury to TRA's business interests resulting from marginal improvements to statistical consumer models based is relatively insignificant.

D.     *Public Interest*

Not only is the public interest served by, as Plaintiff notes, public awareness of where billions of dollars of public funds are spent, but the public interest is also served by complying with the orders of courts of competent jurisdiction. "Public policy dictates that there be an end of litigation[,] that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S. Ct. 517, 75 L. Ed. 1244 (1931). These are "vital public interests" that should be "'cordially regarded and enforced.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981).

### III. CONCLUSION

Based upon the foregoing and applicable law, Defendant respectfully requests this Court deny, in part, Plaintiff's Motion for Preliminary Injunction (Dkt. 14).

Respectfully Submitted,

**JOHN F. BASH**
UNITED STATES ATTORNEY

*/s/ James Dingivan*
**CHARLES K. COOPER**
Assistant United States Attorney
Texas Bar No. 24074070
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 370-1262 (phone)
(512) 916-5854 (fax)
Charlie.Cooper@usdoj.gov
**JAMES DINGIVAN**
Assistant U.S. Attorney
Texas Bar No. 24094139
U.S. Attorney's Office
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5597
Tel. (210) 384-7372
Fax (210) 384-7312
James.dingivan@usdoj.gov

**ATTORNEYS FOR DEFENDANT**
**UNITED STATES OF AMERICA**

### CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2018, a true and correct copy of the foregoing document was tendered for filing to the Clerk of the U.S. District Court for the Western District of Texas using the Court's CM/ECF system.

*/s/James Dingivan*
James E. Dingivan