IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS RETAILERS ASSOCIATION, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 01:18-CV-659-DAE |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | § § § § | |
| Defendant. | § | |

**REPLY IN SUPPORT OF TEXAS RETAILERS ASSOCIATION'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

VINSON & ELKINS L.L.P.

Jason M. Powers
Texas Bar No. 24007867
Allison L. Fuller
Texas Bar No. 24087547
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

Jennifer S. Freel
Texas Bar No. 24051327
2801 Via Fortuna
Suite 100
Austin, TX 78746

*Attorneys for Plaintiff*
*Texas Retailers Association*

**INTRODUCTION**

USDA's Response to TRA's Motion for Preliminary Injunction confirms two key points. ***First***, USDA does not oppose a preliminary injunction prohibiting the Agency from releasing store-level SNAP data for 2011–present.  Resp. at 1–2.  ***Second***, USDA's Response confirms that the central issue in this case is whether the transformation of SNAP to include online operators requires a new "substantial competitive harm" analysis that takes into account the dynamics of this new market.  *Id.* at 9.  At this early stage, the undisputed evidence supports TRA's claim that it does.  To ensure that TRA has a full and fair opportunity to litigate this issue to finality, the Court should enter TRA's requested preliminary injunction.

**ARGUMENT**

This Motion seeks to preserve the status quo.  If USDA is allowed to release the SNAP data at issue, the harm will be immediate and irreparable, and TRA's claim will be moot.  *Sterling v. United States*, 798 F. Supp. 47, 48 (D.D.C. 1992) (after release, "there are no plausible factual grounds for a 'reverse FOIA' claim").  By contrast, USDA does not identify any meaningful harm that it or the public will suffer if USDA is required to withhold this data while this case is pending.  Resp. at 12.  In such circumstances, the Court's inquiry is limited to whether TRA has made the requisite showing of substantial likelihood of success on the merits, namely whether there "is sufficient evidence in the pleadings and exhibits to present a *prima facie* case" to support its claim.  *Daniels Health Scis., v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013).  TRA has made that showing, and it is entitled to a preliminary injunction.

    **A.**    **The South Dakota District Court Did Not Decide the Key Issue in This Case.**

Selectively quoting the South Dakota district court's opinion, USDA argues that it already decided the issue presented in this case.  Resp. at 6–7.  Specifically, USDA cites a

1

finding by the South Dakota court that retailers' predictions of competitive harm were "'speculative at best,'" and the Agency argues this finding ends the inquiry here. *Id.* at 6. But, USDA ignores the South Dakota court's explanation for *why* it believed harm was "speculative." The court's analysis focused heavily on the competitive dynamics of a SNAP market in which competition required physical presence. For example, the South Dakota district court stated that competitive harm was "speculative at best" after it discussed a USDA witness's testimony on "how competitors could use SNAP data to choose the locations of new stores." *Argus Leader Media v. USDA*, 224 F. Supp. 3d 827, 834 (D.S.D. 2016). The court also described as "speculative" the testimony of another USDA witness that disclosure of SNAP sales "might affect a landlord's decision to rent its commercial space." *Id.* And the court found "speculative" the assertion that high SNAP volume would "encourage a competitor to enter that geographic market" because "a variety of factors influence a store's decision to open a new location including: cost of real estate [and] location of real estate." *Id.*

The district court's focus on a brick-and-mortar SNAP market is unsurprising given the evidence presented in that case. USDA notes that the South Dakota court heard two days of trial testimony in May 2016, *see* Resp. at 7, but none of that testimony addressed competitive harm in an online SNAP market. Nor did any of the "over 300 comments" solicited by the Agency in 2014 and cited in USDA's Response address the issue of competitive harm in an online SNAP market. *Id*. Indeed, USDA did not publicly announce the launch of the SNAP online pilot program until months after the trial had ended and years after the comment period had closed.

### B. The Undisputed Evidence Supports TRA's Claims.

Unable to cite any analysis by the South Dakota district court of the likelihood of competitive harm in the new online SNAP market, USDA argues that TRA "will not be able to

2

show" that market conditions have changed and that a new competitive-harm analysis is required. Resp. at 8; *id.* at 10 ("[TRA] will have a difficult time arguing changed circumstances at all."). This argument ignores the record TRA has already developed in this case. HEB's Martin Otto had explained in detail the "unique competitive threat of online operators," and why disclosure of this data would harm Texas retailers in ways that are different than in the brick-and-mortar SNAP market. (Dkt. # 14-2 at ¶¶ 9–15). Other retailers have also testified that SNAP online expansion poses new competitive threats and that, in this new market, disclosure of store-level data would cause competitive harm that is different in quality and degree than in a market without online operators.[1] (Dkt. # 14-3 ¶¶ 16–18 (Brookshire); Dkt. # 14-4 at ¶¶ 10–18 (Brookshire Brothers); Dkt. # 14-5 at ¶¶ 11–16 (Market Basket); Dkt. # 14-6 at ¶¶ 7–10 (Foodland)). This evidence is more than sufficient to satisfy TRA's *prima facie* burden at this stage, especially in light of USDA's failure to submit any evidence of its own.

### C. USDA Has Not Satisfied Its Burden to Establish Issue or Claim Preclusion.

USDA cannot blame the incompleteness of the South Dakota court's analysis on TRA, FMI, or grocery retailers. Resp. at 8. Contrary to USDA's suggestion, it does not matter whether retailers or their trade associations knew about the online pilot program. *Id*. They were not parties in the South Dakota case while the trial court's record was being made. Only FMI was ever a party in the South Dakota case and, even then, FMI was a party only to appeal the district court's final judgment, after the deadline for filing a motion for new trial.[2] As the sole

---

[1] USDA asserts that 2005–2010 data is now "stale" and that "[t]here is no basis for this Court to speculate that such data could have any bearing on the actual, on-the-ground behavior of retailers." Resp. at 12. The agency offers no evidence to support this assertion, and it ignores Otto's uncontroverted testimony that the data "has not become stale" and that it "can still yield important and accurate insights into customers' purchasing behavior." (Dkt. # 14-2 at ¶ 16).

[2] In addition, the Eighth Circuit's review was based on a "clear error" standard, not a *de novo* standard. *Argus Leader Media v. USDA*, 889 F.2d 914, 916–17 (8th Cir. 2018).

3

defendant in the South Dakota case until after final judgment, it was incumbent *on USDA* to inform the court of the new "significant market" it was creating if the Agency wanted the court to decide whether release of SNAP data would cause substantial competitive harm *in that new market*.  *See* Dkt. # 14-9 at 13 (USDA referring to online SNAP as new "significant market").

For this reason, USDA cannot rely on claim or issue preclusion to deny TRA an opportunity to litigate this issue.  USDA acknowledges that it bears the burden of proof on preclusion.[3]  And it admits it must show, among other elements, that the parties in both actions "'are identical or in privity'" and that both actions involve the same claim or issue.  *Id.* at 10–11.  As to the first element, TRA was not a party to the South Dakota case.  It did not intervene in that case, nor was it required to do so.[4]  Neither USDA nor the *Argus Leader* joined TRA or its members, nor does the Agency argue that it would have been jurisdictionally possible to force Texas grocers to join a case the *Argus Leader* chose to file in Sioux Falls.  FED. R. CIV. P. 19.

Under similar circumstances involving successive "FOIA" actions, the D.C. Circuit held that a FOIA requestor was not bound by the judgment in a prior, "reverse FOIA" case and that it was free to litigate the confidentiality issue in a new action in another district.  *Consumers Union of U.S., Inc. v. Consumer Prod. Safety Comm'n*, 590 F.2d 1209, 1222 (D.C. Cir. 1978), *rev'd on*

---

[3] Resp. at 10 (citing *Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986)).  Though USDA improperly attempts to shift the burden of proof to TRA, Resp. at 11, *Braniff* holds that "[t]he party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention, particularly where the record is ambiguous or confusing." 783 F.2d at 1289.  In *Braniff*, the Fifth Circuit reversed a district court's application of *res judicata* where the issues in two actions differed, stating that "if reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied." *Id.*

[4] Under federal procedure, a person is never obligated to intervene in a case to which he has not been joined as a party, and his own claims cannot be precluded by a judgment merely because he had notice of, and an opportunity to intervene, in the case that produced that judgment. *Martin v. Wilks*, 490 U.S. 755, 762–65 (1989).  Preclusion requires a showing that the party controlled the prior litigation, not just that the party was aware of (or even participated in or gave evidence in) the prior case. *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308 (4th Cir. 1987).

*other grounds*, 445 U.S. 375 (1980). *Consumers Union* also rejects any suggestion that USDA's interests necessarily aligned with TRA's interests in South Dakota merely because the Agency advocated withholding the data. *Id.* at 1217–18 ("An agency's interests in FOIA suits of either stripe diverge markedly from private interests, and raise serious doubt whether the agency could ever be deemed to represent members of the public."). An agency's institutional interests may diverge from the submitters' interests; thus, the agency might lack the incentive to zealously advocate for the submitters—a point made painfully clear when USDA suddenly abandoned the South Dakota litigation in January 2017, after having failed to raise the issue of the new online SNAP market in the May 2016 trial.[5]

Finally, even if USDA could show an identity of parties and interests, preclusion would not apply because this case involves a different issue. Markets are not static, and TRA's evidence satisfies its *prima facie* burden to show that the competitive dynamics of the new online SNAP market are different than the market that the South Dakota court considered. *Boeing Co. v. U.S. Dep't of Air Force*, 616 F. Supp. 2d 40, 45 (D.D.C. 2009) ("Courts may not impose a *per se* rule that in all cases prohibits or requires the release of one particular type of information.").

## CONCLUSION

In sum, this is not a collateral attack on the South Dakota court's decision. TRA requests that this Court undertake an analysis that the South Dakota court did not consider. To do so, however, the Court must extend the current injunction to preserve the status quo and prevent the irreparable harm of disclosure from mooting TRA's claims. Thus, TRA requests the Court enter its requested Preliminary Injunction and award such further relief as it finds just and proper.

---

[5] Even if USDA can ultimately satisfy its burden to show that FMI represented TRA's interests, application of *res judicata* would be unjust. The trial record had already been made before FMI intervened to appeal, and that appeal was on the "clear error" standard of review.

5

Respectfully submitted,

VINSON & ELKINS L.L.P.

*/s/ Jason M. Powers*_____
Jason M. Powers
Texas Bar No. 24007867
Allison L. Fuller
Texas Bar No. 24087547
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

Jennifer S. Freel
Texas Bar No. 24051327
2801 Via Fortuna
Suite 100
Austin, TX 78746

***Attorneys for Plaintiff***
***Texas Retailers Association***

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2018, a true and correct copy of the foregoing document was tendered for filing to the Clerk of the U.S. District Court for the Western District of Texas using the Court's CM/ECF system.

*/s/  Jennifer S. Freel* _____
Jennifer S. Freel

6