UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS RETAILERS ASSOCIATION, | § | No. 1:18–CV–659–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF AGRICULTURE, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER GRANTING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

Before the Court is Plaintiff Texas Retailers Association's ("Plaintiff"
or "TRA") Motion for Preliminary Injunction.  (Dkt. # 14.)  The Court held a
hearing on this matter on August 23, 2018.  After careful consideration of the
memoranda in support of and in opposition to the motion, and in light of the
parties' arguments advanced at the hearing, the Court, for the reasons that follow,
**GRANTS** the motion for preliminary injunction.  (Dkt. # 14.)

THE SUPPLEMENTAL NUTRITIONAL ASSISTANCE PROGRAM

The Supplemental Nutrition Assistance Program ("SNAP"), formerly
known as the Food Stamp Program, was implemented by Congress "to safeguard
the health and well-being of the Nation's population by raising levels of nutrition
among low-income households."  7 U.S.C. § 2011.  The program operates by

increasing low-income families' food purchasing power.  Id.  Qualifying

households receive benefits in the form of Electronic Benefit Transfer ("EBT")

cards with which they can purchase eligible food items.  7 U.S.C. §§ 2016(a),(c).

Only approved stores are eligible to participate in the program and accept SNAP

benefits in exchange for eligible food items.  7 U.S.C. § 2018.  To participate,

"[t]he SNAP household pays for its groceries by swiping [the EBT card] and

entering a PIN number.  A third-party processor verifies that the SNAP account

has available benefits and then approves or denies the transaction.  If the

transaction is approved, the third-party processor then transfers money from the

SNAP household's account to the retailer's bank and sends the redemption data[1] to

the Food and Nutrition Service," an agency of the United States Department of

Agriculture ("USDA").  Argus Leader Media v. U.S. Dep't of Agric., 224 F. Supp.

3d 827, 829 (D.S.D. 2016).

       Prior to the present year, 2018, SNAP recipients could only redeem

their benefits at a participating SNAP brick-and-mortar retail store.  (Dkt. # 14 at

2.)  Now, however, SNAP recipients in some states can purchase SNAP-eligible

products online for delivery to their home.  (Id.)  According to Plaintiff, this is only

a pilot program for the moment, but the USDA will soon allow the online program

---

[1] Redemption data "is the dollar amount of goods that a retailer sells to SNAP
beneficiaries and subsequently redeems from the federal government in a given
year."  (Dkt. # 17 at 2.)

nation-wide.  (Id.)  It is anticipated that online SNAP redemptions will represent a significant market for online retailers who accept the benefits.  (Id.)

FACTUAL BACKGROUND

Relevant to the issues in the current suit, in 2011, a South Dakota newspaper, the *Argus Leader*, submitted a Freedom of Information Act ("FOIA") request for annual store-level redemption data for SNAP retailers for the years 2005–2010.  (Dkt. # 1 at 1.)  This data had never before been released by the USDA as it was determined to be confidential.  (Id.)  Because it did not receive its request for store-level SNAP redemption data, the *Argus Leader* sued in federal court in South Dakota.  (Dkt. # 14 at 2.)

Several years later, in 2014, while the federal suit was still ongoing, the USDA informed SNAP retailers of the lawsuit and solicited comments on whether release of the data would cause them substantial competitive harm.  (Id. at 4.)  According to Plaintiff, the USDA received hundreds of comments from retailers and members of the public, but none addressed the possible unfairness of giving *online* SNAP operators access to traditional retailers' historical store-level redemption data.  (Id.)

In May 2016, the case went to trial; the USDA sought to keep the data confidential from disclosure.  (Dkt. # 14 at 4.)  According to Plaintiff, at trial, the USDA did not mention anything about an online program to the court and did not

make any argument regarding the release of the data's potential benefit to SNAP

online retailers in competition with traditional SNAP retail stores.  (Id.)  See Argus

Leader Media, 224 F. Supp. 3d at 30–31.  Testimony at trial focused only on the

sensitivity of store-level SNAP redemption data in a market comprised solely of

traditional brick-and-mortar retailers.  (Dkt. # 14 at 4.)

On November 30, 2016, the district court issued its decision, finding

that while "[c]ompetition in the grocery business is fierce[,] . . . any potential

competitive harm from the release of the requested SNAP data is speculative at

best."  Argus Leader Media, 224 F. Supp. 3d at 833–34.  Accordingly, because the

court determined that the USDA had failed to meet its burden of showing that the

release of the requested information would cause substantial competitive harm, the

court concluded that the USDA should disclose the information.  Id. at 835.  The

Eighth Circuit Court of Appeals affirmed, finding "no clear error" in the district

court's decision.  Argus Leader Media v. U.S. Dep't of Agric., 889 F.3d 914, 916–

17 (8th Cir. 2018).  However, issuance of the mandate for the release of the data

was stayed while the Supreme Court considered the pending certiorari petition in

that case.[2]  Food Mktg. Inst. v. Argus Leader Media, ___ S.Ct. ___, 2018 WL 3767657 (Aug. 9, 2018).[3]

According to Plaintiff, because it was not at issue in that case, neither the district court in Argus Leader nor the Eighth Circuit considered the potential harm in giving traditional SNAP retailers' data to online SNAP retailers.  (Dkt. # 14 at 5–6.)  Plaintiff asserts that allowing online SNAP retailers access to this data would result in greater harm than that contemplated in Argus Leader, which concerned competition only among traditional brick-and-mortar SNAP retailers. (Dkt. # 14 at 5.)  Plaintiff contends that neither court was made aware that, in September 2016, during the pendency of the suit in Argus Leader, the USDA solicited volunteers to participate in an online SNAP redemption pilot program. (Id.)  Thereafter, in October 2017, the USDA announced that the pilot program, consisting of seven firms, would launch in 2018.  (Id.)  The pilot program has now launched and it will last two years, during which time SNAP recipients will be able to purchase eligible groceries online.  (Id.)

_____

[2] At the hearing, the parties updated the Court on the status of the stay.  According to the parties, the mandate is stayed for an unspecified time.

[3] Prior to the appeal to the Eighth Circuit, the USDA announced on its own that it would release the data to "comply with the [South Dakota] court's ruling," effectively conceding defeat on the issue.  (Dkt. # 14-12.)  Thereafter, however, the Food Marketing Institute ("FMI") intervened in the case in order to pursue an appeal of the district court's judgment after the USDA decided not to litigate the issue any further.  (Dkt. # 4 at 5–6.)

<u>PROCEDURAL BACKGROUND</u>

Plaintiff TRA is a nonprofit trade association that represents Texas' retail industry regarding regulatory and legislative concerns and issues.  (Dkt. # 1 at 3.)  The TRA Food Council is an organized committee under the TRA, and consists of major multistate operators, regional supermarkets, independently-owned supermarkets, and neighborhood grocery stores.  (<u>Id.</u>)  On August 6, 2018, TRA filed suit against the USDA, under the Administrative Procedure Act, 5 U.S.C. §§ 701–06.  (Dkt. # 1.)  TRA's suit seeks declaratory and injunctive relief from the USDA's decision to release confidential business information in response to a request under the FOIA.  (<u>Id.</u>)

Specifically, TRA's suit in this case alleges that the USDA's administrative decision to release the 2005–2010 SNAP store-level data must be vacated because the USDA did not meet its administrative responsibility to carefully and fully examine whether release of this data would cause substantial harm in light of the online SNAP retail pilot program.  (Dkt. # 14 at 3.)  TRA states that it has learned of subsequent FOIA requests for the same for the years 2011–present, but that the USDA has not informed SNAP retailers of these requests, nor were they solicited for their comments regarding the release of the data.  (<u>Id.</u> at 6.)  TRA contends that the USDA cannot rely on the <u>Argus Leader</u> opinion to release this data because that decision was based on an analysis much different from the

6

present, as the USDA failed to give that court relevant information concerning online SNAP retailers' participation.  (Id. at 3.)  TRA asserts that the USDA's own regulations require it to notify SNAP retailers of FOIA requests and of its decisions to release their business information, which TRA argues the USDA has failed to discharge.  (Id.)

After TRA filed suit, this Court[4] granted TRA's motion for a temporary restraining order ("TRO") on August 8, 2018; the TRO was set to expire at midnight on the fourteenth day after its issuance.  (Dkt. # 8.)  The Court set a bond and ordered briefing on the instant motion for preliminary injunction.  (Dkts. ## 9, 10.)  In accordance with the Court's order, TRA paid the bond and filed its motion for preliminary injunction on August 14, 2018.  (Dkt. # 14.)  The USDA filed a response on August 20, 2018.  (Dkt. # 17.)  On August 20, 2018, the Court granted the parties' unopposed motion to extend the TRO another twenty-four hours.  (Dkt. # 6.)  At the hearing, the parties agreed to extend the TRO until September 5, 2018, so that the Court could fully consider the merits of the request in the instant motion.  The motion is considered below.

---

[4] On August 13, 2018, this matter was transferred from the docket of the Honorable Lee Yeakel to the undersigned.  (Dkt. # 12.)

## LEGAL STANDARD

"Rule 65 of the Federal Rules of Civil Procedure governs both preliminary injunctions and temporary restraining orders."  Total Safety U.S., Inc. v. Rowland, Civil Action No. 13-6109, 2014 WL 793453, at *5 (E.D. La. Feb. 26, 2014); see also Fed. R. Civ. P. 65.  The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance.  Opulent Life Church v. City of Holly Springs, Miss., 697 F.3d 279, 288 (5th Cir. 2012); Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1050 (5th Cir. 1997).

"The prerequisites for preliminary injunctive relief are long-established in this circuit."  Libertarian Party of Tex. v. Fainter, 741 F.2d 728, 729 (5th Cir. 1984).  A preliminary injunction should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest.  Lindsay v. City of San Antonio, 821 F.2d 1103, 1107 (5th Cir. 1987); Valley, 118 F.3d at 1051.

8

"None of the four requirements has a fixed quantitative value."

Monumental Task Committee, Inc. v. Foxx, No. 15-6905, 2016 WL 311822 (E.D.

La. Jan. 26, 2016) (citing Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 180 (5th Cir.

1975)).  "Therefore, in applying the four part test, 'a sliding scale is utilized, which

takes into account the intensity of each in a given calculus.'"  Id. (citing Seatrain,

518 F.2d at 180).  "This requires 'a delicate balancing of the probabilities of

ultimate success at final hearing with the consequences of immediate irreparable

injury that could possibly flow from the denial of preliminary relief.'"  Id. (citing

Klitzman, Klitzman & Gallagher v. Krut, 744 F.2d 955, 958 (3d Cir. 1984)).

"When the other factors weigh strongly in favor of an injunction, 'a showing of

some likelihood of success on the merits will justify temporary injunctive relief.'"

Id. at *5 (citing Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.,

621 F.2d 683, 685 (5th Cir. 1980)).  "However, no matter how severe and

irreparable the threatened harm and irrespective of the hardships in which a

preliminary injunction or lack of one might cause the parties, 'the injunction

should never issue if there is no chance that the movant will eventually prevail on

the merits.'"  Id. (citing Seatrain, 518 F.2d at 180).

At the preliminary injunction stage, the procedures in the district court

are less formal, and the district court may rely on otherwise inadmissible evidence,

including hearsay evidence.  Sierra Club, Lone Star Chapter v. F.D.I.C., 992 F.2d

545, 551 (5th Cir. 1993).  However, even when a movant establishes each of the

four requirements described above, the decision whether to grant or deny a

preliminary injunction remains within the court's discretion, and the decision to

grant a preliminary injunction is treated as the exception rather than the rule.  Miss.

Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir.

1985).

DISCUSSION

TRA's motion for preliminary injunction asks the Court to preserve

the status quo and prohibit the USDA from releasing confidential store-level SNAP

data of Texas-based SNAP retailers ("SNAP Information"), for the years 2005 to

the present, until final judgment in this case.  (Dkt. #14 at 6.)  As the USDA points

out to the Court, TRA's request for injunctive relief encompasses two distinct

categories of documents: (1) those documents which were the subject of the Argus

Leader litigation—SNAP redemption data requested from 2005–2010;[5] and (2) all

other USDA records containing traditional retailers' SNAP redemption data in the

state of Texas for the years post-2010, which were not the subject of litigation in

Argus Leader.  (See Dkt. # 17 at 1.)

---

[5] The Court recognizes that TRA only seeks to prevent disclosure of this data as it
pertains to Texas-based SNAP retailers.

In responding to TRA's motion, the USDA indicates that it only opposes a preliminary injunction in part.  (Dkt. # 17.)  It agrees to a preliminary injunction covering the second category of documents—SNAP redemption data post-2010 which was not the subject of litigation in Argus Leader; however, it opposes the first category of documents from 2005 to 2010, which were the subject of litigation in Argus Leader.  (Id. at 1–2.)

Given that the USDA does not oppose it and the record at this stage of the case supports it, the Court finds that a preliminary injunction on the second category of documents is warranted, prohibiting the USDA from releasing confidential store-level SNAP data for the years post-2010 of Texas-based SNAP retailers.  The Court will now consider whether a preliminary injunction is also warranted for the SNAP redemption data for the years 2005–2010 of Texas-based SNAP retailers.

I.      Elements of Preliminary Injunction

The Court considers below whether TRA can satisfy the elements necessary for preliminary injunctive relief.

A.      Substantial Likelihood of Success

To obtain a preliminary injunction, the movant must first show a substantial likelihood of success on the merits.  Lindsay, 821 F.2d at 1107.  In order to do so, a "plaintiff must present a prima facie case, but need not prove that

11

he is entitled to summary judgment." Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C., 710 F.3d 579, 582 (5th Cir. 2013).  Such an inquiry considers only the substantive merits of a claim, but not any potential procedural barriers. Janvey v. Alguire, 647 F.3d 585, 599 (5th Cir. 2011).

TRA contends that FOIA's Exemption 4 applies in this case, and that if the USDA releases the SNAP Information it would be an "abuse of discretion" and contrary to law under FOIA.  (Dkt. # 14 at 7.)  TRA argues that it would be substantially harmed by release of the SNAP Information.  (Id. at 8.)  Additionally, TRA argues that the USDA did not follow its own administrative regulations in processing the FOIA request for the SNAP Information.  (Id. at 9–10.)

The USDA responds that this case is nothing more than an attempt to collaterally attack the decision in Argus Leader.  (Dkt. # 17 at 7–9.)  The USDA contends that there is no new basis to reconsider that decision here in this Court, and that res judicata prevents TRA from re-litigating what has already been decided in Argus Leader.  (Id. at 10–11.)

1.    Freedom of Information Act

"FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure." Jarvik v. CIA, 741 F. Supp. 2d 106, 113 (D.D.C. 2010) (citing 5 U.S.C. § 552; Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973)).  Under FOIA, federal district courts

12

have jurisdiction to order the release of improperly withheld or redacted information.  5 U.S.C. § 552(a)(4)(B).  FOIA Exemption 4 exempts from public disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

To demonstrate that Exemption 4 shelters the SNAP Information from disclosure, TRA is required to show that the information contained within is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.  Flightsafety Servs. Corp. v. Dep't of Labor, 326 F.3d 607, 611 (5th Cir. 2003) (citing Cont'l Oil Co. v. Federal Power Comm'n, 519 F.2d 31, 35 (5th Cir. 1975)).

Here, the parties do not dispute that the first element is met.  Indeed, the SNAP Information at issue is commercial or financial.  With respect to the second element, there is no real dispute that the SNAP Information is obtained from a "person," which is defined to "include[] an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2).  Here, the Court agrees with the court in Argus Leader that "the requested [SNAP] information is obtained from a person, namely the third-party processors who facilitate the SNAP transactions."  Argus Leader, 224 F. Supp. 3d

at 832.  Accordingly, the Court must consider the third element—whether the

SNAP Information is privileged[6] or confidential.

>2.    Is the SNAP Information Confidential?

Information is confidential under Exemption 4 if its disclosure would

likely (1) impair the government's ability to obtain necessary information in the

future;[7] or (2) cause substantial competitive harm to the person from whom it was

obtained.  Calhoun v. Lyng, 864 F.2d 34, 36 (5th Cir. 1988); see also Cont'l Oil,

519 F.2d at 35.

Relevant here, to show substantial competitive harm, the agency must

show by specific factual or evidentiary material, not simply by conclusory or

generalized allegations, that (1) the person or entity from which information was

obtained actually faces competition; and (2) substantial harm to a competitive

position would likely result from disclosure of the information in the agency's

records.  Calhoun, 864 F.2d at 36; see also Sharyland Water Supply Corp. v.

Block, 755 F.2d 397, 399 (5th Cir. 1985); Nat'l Parks & Conservation Ass'n v.

Kleppe, 547 F.2d 673, 679 (D.C. Cir. 1976).

---

[6] TRA makes no argument that the SNAP Information is privileged; thus, the Court will only consider whether it is confidential.

[7] The parties do not make any argument for applicability of this prong.

i.      Actual Competition

This Court agrees again with the district court's ruling in <u>Argus</u>

<u>Leader</u> on actual competition and the Court thus finds that there is a substantial

likelihood that there is actual competition in this case.  <u>See</u> <u>Argus Leader</u>, 224 F.

Supp. 3d at 833.  "Competition in the grocery business is fierce," and the Court

presumes here, even more fierce with the introduction of online grocery shopping.

<u>See</u> <u>id.</u>  Accordingly, TRA has demonstrated the first prong of showing substantial

competitive harm.

ii.      Likelihood of Substantial Competitive Harm

When assessing potential competitive harm, the Court may consider

the nature of the material sought, the competitive circumstances surrounding

disclosure, and credible opinion testimony.  <u>Kleppe</u>, 547 F.2d at 683.  "Although a

party [opposing disclosure] need not 'show actual competitive harm,' conclusory

and generalized allegations—standing alone—are not sufficient."  <u>Argus Leader</u>,

224 F. Supp. 3d at 833 (quoting <u>Pub. Citizen Health Research Grp. v. Food &</u>

<u>Drug Admin.</u>, 704 F.2d 1280, 1291 (D.C. Cir. 1983)).

Regarding the second prong, TRA argues that the USDA is in a

position to fundamentally change the SNAP marketplace if it releases the SNAP

Information, resulting in substantial competitive harm to traditional SNAP

retailers.  (Dkt. # 14 at 8.)  TRA asserts that by releasing the data, online SNAP

retailers will use this information to target traditional retailers' customers through

sophisticated data analysis, but not have to share the geographically-precise SNAP

redemption data, resulting in an unfair commercial advantage.  (Id.)  As support for

this assertion, TRA has provided the declaration of Martin Otto, the Chief

Operating Officer ("CEO") and Chief Merchant of H-E-B grocery stores.  (Dkt.

# 14-2.)  Otto declares that, since online retailers could not until recently

participate in SNAP, there is no reciprocal data for traditional retailers to access.

(Id. at 5.)  He also states that "it is not clear that online operators will ever generate

'store-level' data because they serve customers through central distribution

facilities," and thus, "[t]he aggregated data they generate will never be as

meaningful as the store-level data we generate.  H-E-B would be put in the position

of permanently subsidizing the data analytics programs of its lowest-cost

competitors."  Id.  TRA has attached declarations from others who echo this

concern, including the Director of Business Development and Compliance for

Brookshire Grocery Company (Dkt. # 14-3) and a Vice President of Retail

Operations for Brookshire Brothers, along with one other grocery executive (Dkts.

## 14-4, 14-5.)

TRA further argues that the opinion in Argus Leader failed to

consider this new "significant market" because it did not consider online retailers

when determining substantial harm.  (Dkt. # 14 at 9.)  At the hearing, TRA argued

that the Court must consider this issue now.  TRA asked the Court to contemplate smaller cities and towns in Texas where SNAP retailers' data is relatively stable— for instance, counsel argued that a low income community in 2010 is likely still a low income community today, and therefore the data, even if old, is still relevant. Counsel argued that if the SNAP data were released, the SNAP beneficiaries in these communities "are so tightly clustered all you need to do is take census data and publicly available data about the marketplace and you could just update [SNAP] beneficiaries sales and come up with a very accurate model of what [] people would be buying in [] stores today."  Counsel further argued that online SNAP retailers can use the data to "target just a few key products and make the overall profitability of a store a lot more challenging."  Counsel acknowledged that a big grocery store chain "might be able to weather that competition," but smaller, traditional SNAP retailers would not.

TRA contends that the courts in Argus Leader were never informed of the issues above relating to online SNAP retailers, and therefore could not consider whether release of SNAP Information might harm traditional SNAP retailers.  It is for this reason, TRA argues, that a contrary finding on the matter in this Court will not be at odds with that opinion.  TRA asserts that Argus Leader is different because: (1) TRA, who represents actual SNAP retailers—as opposed to a newspaper—was not a party to that lawsuit; and (2) USDA introduced limited data

at the district court level before abandoning the case.  (Id.)  For these reasons, TRA contends that the competitive-harm analysis in Argus Leader was incomplete and cannot bind this Court in making a decision on the matter.  (Id. at 10.)

The USDA disagrees wholly with TRA's position.  (Dkt. # 17.)  The USDA contends that this case is no different from Argus Leader in considering the release of SNAP redemption data from 2005–2010, in which the district court and Eighth Circuit extensively considered the same issues presented here.  (Id. at 6.) The USDA asserts that the court's reasoning that any claims of competitive injury were "speculative at best" was correct and that it is bound to follow the lawful order of the Eighth Circuit here in this case.  (Id. at 6–7.)  The USDA contends that it carefully and fully researched release of the redemption data prior to the bench trial in Argus Leader, defended itself vigorously in that case, published a request for information about disclosing SNAP redemption data in the Federal Register, and considered over 300 comments from retailers and trade associations.  (Id. at 7.)

The USDA also maintains that there is no substantial competitive harm here because the USDA, TRA, and intervening party in Argus Leader FMI were all aware of the online pilot program both at the time of trial in Argus Leader, as well as on appeal to the Eighth Circuit.  (Dkt. # 17 at 7–8.)  The USDA argues that TRA, and the grocery store executives it relies on as witnesses, cannot claim they lacked notice of the online pilot program.  (Id. at 8.)  In 2014, the Farm Bill

mandated that the USDA conduct this online program, which the USDA argues

provided sufficient notice of online SNAP retailers entering the market in time for

all parties to consider this before final judgment in 2016 in <u>Argus Leader</u>. <u>See</u> <u>id.</u>;

Agricultural Act of 2014, § 4011, 7 U.S.C. § 2016(h)(14)(B). USDA contends that

no one raised this issue prior to this time, although FMI certainly could have done

so by way of Rule 60(b) of the Federal Rules of Civil Procedure, and that raising

the issue now, in a new lawsuit, is an inappropriate forum for the Court to grant

injunctive relief.[8]

   The USDA further asserts that the decision in <u>Argus Leader</u> was not

reliant on a lack of online competition, and therefore it is of no matter that the

courts in that case did not take online competition into account. The USDA

contends that, in any case, the courts in <u>Argus Leader</u> recognized that there was

some possibility of harm, but that release of SNAP redemption data would not

fundamentally alter the grocery stores' already wide-ranging, publically available

data. (<u>Id.</u> at 8.) As the Eighth Circuit found in <u>Argus Leader</u>, the USDA argues

that release of SNAP Information may only marginally improve the already

available data, but would not cause any substantial competitive harm. (<u>Id.</u> at 6.)

---

[8] The USDA also argues that TRA's claims in this case regarding the 2005–2010
SNAP redemption data release are precluded by res judicata. (Dkt. # 17 at 10.)
Until it has been more fully briefed by both parties, the Court will not consider the
merits of this argument at this time.

While it is a close call given that the Eighth Circuit's opinion overlaps to some degree with this case, the Court finds important differences between the two cases.  First, the Court acknowledges that TRA has not made an argument in this case that is significantly different from that argued to the district court and the Eighth Circuit in Argus Leader.  But it is, however, significant that neither court considered these same arguments in contemplation of competition from online SNAP retailers.  Second, the Court finds TRA's argument important that online SNAP data cannot reciprocally be exchanged with traditional SNAP retailers, possibly resulting in an unfair commercial advantage.  See Biles v. Dep't of Health and Human Servs., 931 F. Supp. 2d 211, 224–25 (D.D.C. 2013).

Additionally, contrary to the USDA's argument, whether or not the USDA or FMI knew about the online SNAP pilot program during the duration of the litigation in Argus Leader is irrelevant.  What is clear is that it was not part of the record and neither the district court nor the Eighth Circuit considered the potential for substantial competitive harm to traditional SNAP retailers should online SNAP retailers have access to the redemption data.  While it may ultimately prove that there is no significant harm to traditional SNAP retailers, it is not a decision the Court can make today with any certainty.

Thus, while the Court finds it a close question, TRA has demonstrated that it has a chance of prevailing on the merits of its claim seeking to prevent the

20

USDA's disclosure of the SNAP redemption data for the years 2005–2010 of

Texas-based SNAP retailers.

### 3.    USDA's Administrative Regulations

TRA also contends that it will substantially prevail on the merits of its

claim because USDA's prospective release of post-2010 SNAP redemption data

would violate its own administrative policies.  (Dkt. # 14 at 9.)  These regulations

require the USDA to "[p]rovide the business information submitter with prompt

notification of a request for that information" and afford it "reasonable time in

which to object to the disclosure of any specified portion of the information."  (Id.

at 9–10 (quoting 7 C.F.R. § 1.12(a).)  An exception to this requirement exists when

"it is readily determined by the agency that the information requested . . . is not

exempt by law from disclosure."  7 C.F.R. § 1.12(a).

TRA contends that the USDA has not produced any administrative

decision showing that it considered the competitive harm that release of SNAP

redemption data post-2010 would have on traditional SNAP retailers.  (Dkt. # 14 at

10.)  TRA also argues that SNAP retailers were not given an opportunity to

comment on this release of data because the USDA did not notify them that the

data from 2010 until present had been requested.[9]  (Id.)  TRA argues that Argus

---

[9] Again, the Argus Leader opinion only considered data requested for annual store-level redemption data for SNAP retailers for the years 2005–2010.  (Dkt. # 1 at 1.)

Leader does not apply to post-2010 data and, therefore, USDA cannot rely on any exception to overcome its administrative failures.  (Id.)

Again, as previously discussed, the USDA will agree to a preliminary injunction prohibiting the USDA from releasing confidential store-level SNAP redemption data for the years post-2010 for Texas-based SNAP retailers, until a full trial on the merits for this claim.  Accordingly, the Court will not consider the merits of TRA's claim on the issue at this time.

B.    Substantial Threat of Irreparable Harm

As to the second element of a preliminary injunction, a plaintiff must demonstrate a substantial threat of irreparable harm if the injunction is not granted. Lindsay, 821 F.2d at 1107.  TRA argues that its members will suffer irreparable harm if injunctive relief is not granted.  (Dkt. # 14 at 10.)  It contends that, if the Supreme Court does not grant a stay in Argus Leader, Texas' SNAP retailers' data will be subject to imminent public release and TRA will no longer be able to argue that this data is covered by Exemption 4.  (Id. at 10–11.)

In response, the USDA points out that the data TRA seeks to prevent from disclosure is almost a decade old, since the Argus Leader opinion concerned only data from 2005–2010.  (Dkt. # 17 at 11.)  The USDA contends that even if there is a potential imminent data release, online retailers would in actuality benefit very little by obtaining such data since it is so outdated.  (Id. at 12.)  Specifically,

22

the USDA argues that TRA has failed to point to a single example where an online

retailer has used decade-old data in altering its competitive behavior.  (Id.)

The Court definitely shares TRA's concern that once the data is

released, it cannot be retracted and TRA is left without a position to argue a FOIA

exemption applies.  Given this, the Court finds that TRA has demonstrated that it

will experience irreparable injury for which there is no adequate legal remedy.  As

discussed above, while the data is somewhat outdated, TRA has argued that it may

still be competitively harmful to smaller SNAP retailers.  Accordingly, the Court

finds that TRA has shown a substantial threat of irreparable harm if the injunction

is not issued.[10]

C.      Balancing of Equities

The third element for obtaining a preliminary injunction is whether

the threatened injury to the movant of not granting the injunction outweighs any

harm that may result to the non-movant from granting the injunction.  Lindsay, 821

F.2d at 1107.  In support of this element, TRA argues that Texas SNAP retailers

will be immediately and irreparably harmed by the release of SNAP Information,

but that the USDA will not be harmed by continuing to withhold the information

pending a trial on the merits.  (Dkt. # 14 at 11.)  TRA highlights that the USDA has

never before released this data, so there would be no harm in maintaining the status

---

[10] The Court notes that the Supreme Court currently has a stay in place preventing
the USDA from releasing the data.

quo.  (Id.)  TRA argues that it has a compelling interest in protecting existing

SNAP retailers from unfair competitive harm because they "serve SNAP recipients

and their local communities by ensuring that residents are not forced to redeem

their benefits at outlets that lack a full range of healthy SNAP-eligible products."

(Id.)

    The USDA responds that the injury of an injunction outweighs any

harm to TRA because it would force the Government to potentially disregard the

Eight Circuit's mandate ordering disclosure of the data on this very issue.  (Dkt.

# 17 at 12.)  The USDA argues that there would be very little harm to TRA

because the data might only marginally improve online SNAP retailers' statistical

consumer models.  (Id.)

    The Court acknowledges USDA's concern about disregarding the

opinion of a sister court.  However, given the substantial threat of irreparable harm

to TRA should the data be released, and the de minimis injury to the USDA from

maintaining the status quo, the Court finds the balance of equities weighs in favor

of the issuance of a preliminary injunction.

  D. <u>Public Interest</u>

    Finally, the Court considers whether issuing an injunction would

undermine the public interest.  <u>See</u> <u>Lindsay</u>, 821 F.2d at 1107.  TRA acknowledges

that the public has a general interest in knowing how federal funds are spent, and

states that "transparency interest is served in the status quo and will continue being served, regardless of this case."  (Dkt. # 14 at 11.)  Instead, TRA argues that it seeks only to protect sensitive store-level SNAP data, and not data on any national, state, or ZIP code level.  (Id.)  TRA further contends that there is a compelling interest in protecting existing Texas SNAP retailers from unfair competitive harm, and ensuring the SNAP beneficiaries who utilize these retailers are not forced to redeem their benefits at outlets that lack healthy SNAP-eligible products.  (Id.)

The Court agrees that, in general, the public interest is served by the honest, public disclosure of how federal funds are spent.  The Court recognizes however that to the extent a FOIA exemption applies to any such disclosure, data should not be released to the public.  Additionally, there is a legitimate public interest in ensuring SNAP retailers are protected from competitive harm.  For these reasons, the Court finds that a preliminary injunction in this case would not undermine the public interest.

Upon balancing the four prerequisites for issuance of preliminary injunctive relief, the Court concludes that the consequences of immediate irreparable harm to TRA are very great should the Court not grant the relief it requests at this time.  The Court makes this decision by considering that the harm to the USDA is minimal by maintaining the status quo and continuing to withhold the SNAP Information until a full trial on the merits.  Additionally, TRA has

shown a least a chance of prevailing on the merits of its claims.  For these reasons, the Court finds that TRA's motion for a preliminary injunction should be granted in whole.

CONCLUSION

Based on the foregoing, the Court will **GRANT** TRA's Motion for Preliminary Injunction.  (Dkt. # 14.)  It is therefore **ORDERED** that, pursuant to Federal Rule of Civil Procedure 65, the $1,000 bond previously posted by TRA to support the Temporary Restraining Order is hereby retained as security for and applied to this Preliminary Injunction.  The Court further **ORDERS** that the USDA is hereby **RESTRAINED** and **ENJOINED**, as follows:

> The USDA is restrained and enjoined from releasing or disclosing to any party, entity, or person, in any way, the SNAP Information. This Order applies only to the individual-store-level information of SNAP-participating retailers located in the State of Texas. This Order does not limit in any way the ability of the USDA to release SNAP redemption data for individual stores located outside the State of Texas, and does not limit in any way the USDA's ability to release SNAP redemption data aggregated to the national, state, or ZIP-code level in accordance with the USDA's historical practices.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, August 27, 2018.

_____
David Alan Ezra
Senior United States Distict Judge