IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS RETAILERS ASSOCIATION, § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 01:18-CV-659 |
| § | |
| UNITED STATES DEPARTMENT § | |
| OF AGRICULTURE, § § | |
| Defendant. § | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Texas Retailers Association ("TRA") files this First Amended Complaint against the United States Department of Agriculture ("USDA") and alleges as follows:

**INTRODUCTION**

1. This is an action under the Administrative Procedure Act, 5 U.S.C. §§ 701–06, for injunctive and declaratory relief from USDA's decision to release confidential business information in response to a request under the Freedom of Information Act ("FOIA"). In 2011, a South Dakota newspaper, the *Argus Leader*, submitted a FOIA request for annual store-level redemption data for the Supplemental Nutrition Assistance Program ("SNAP"). The request sought sales figures for 2005-2010. For decades, such data has been kept confidential by USDA.

2. In 2014, however, one of the regulatory grounds underlying USDA's longstanding confidentiality policy was overruled by a federal appeals court in a FOIA case brought by the *Argus Leader* in South Dakota. Then, based on a limited record compiled in 2014 and 2016, the district court in that case overruled the other basis for USDA's withholding of the information, finding that release of annual store-level redemption data would not cause SNAP retailers substantial competitive harm. The district court's factual finding was made in the

1

context of a program that was limited exclusively to brick-and-mortar retailers. When USDA solicited submitter comments, and when the district court heard evidence on the issue of substantial competitive harm, online retailers were not permitted to participate in SNAP.

3. In 2017, USDA changed policy, announcing that it would be extending SNAP to online retailers as part of a pilot program that the agency expects to expand nationwide in the near future. Especially in light of the rapidly growing involvement of large online and data-driven merchants into the retail food market during the last two years, this dramatic expansion of SNAP alters the competitive landscape for brick-and-mortar retailers, making disclosure of confidential sales figures, such as store-level SNAP redemption data, even more harmful. Nevertheless, the agency has decided that it will follow the district court's stale determination that disclosure of this data will not cause SNAP retailers substantial competitive harm.

4. After the USDA made its decision to release the 2005-2010 data sought by the *Argus Leader*, USDA received at least twenty additional FOIA requests for store-level redemption data through the present, most of which would cover the store-level redemption data of Texas retailers. USDA has apparently decided to release this data, purportedly based on the outcome in the *Argus Leader*'s case, without notifying retailers or soliciting comments.. TRA is unaware of any separate administrative assessment or formal administrative decision having been made by the agency as to the confidentiality of this data or the likelihood that its public release will cause competitive harm

5. Through this action, TRA seeks to protect its members' confidential information from public disclosure and to prevent the substantial and irreparable harm to its members that would result from such disclosure. On August 27, the district court in this case granted TRA's

request for a preliminary injunction prohibiting USDA from releasing any store-level SNAP data of Texas retailers pending final judgment in this case.

6. Accordingly, with this preliminary injunction having been granted, TRA seeks:

(a) a declaration pursuant to 28 U.S.C. §§ 2801 and 2202, and an order pursuant to 5 U.S.C. § 706(2), that:

(1) Texas retailers' store-level SNAP redemption data is Confidential Business Information or contains trade secrets;

(2) Texas retailers' store-level SNAP redemption data is exempt from disclosure under FOIA Exemption 4, as provided in 5 U.S.C. § 552(b)(4);

(3) USDA is prohibited from disclosing Texas retailers' store-level SNAP redemption data pursuant to the Trade Secrets Act, 18 U.S.C. § 1905, and other law;

(4) USDA's release of Texas retailers' store-level SNAP redemption data would violate the Administrative Procedure Act; and

(5) USDA's release of Texas retailers' store-level SNAP redemption data in light of the recent expansion of SNAP to online retailers would be arbitrary, capricious, and an abuse of discretion;

(b) an order, pursuant to 5 U.S.C. § 706(2), reversing USDA's decisions to release Texas retailers' store-level SNAP redemption data and barring USDA from releasing that data or, in the alternative, an order remanding the matter to USDA to consider whether, in light of the expansion of SNAP to online retailers, the release of this data would cause retailers substantial competitive harm;

(c) the maintenance of the current preliminary injunction prohibiting USDA from releasing Texas retailers store-level data, and

(d) a permanent injunction prohibiting USDA from releasing Texas retailers' store-level SNAP redemption data; and

(e) any other relief as the Court may deem just and proper.

7. TRA does not seek to block the release of data for retailers that are not based in Texas, nor does it seek to block any of USDA's release of aggregated SNAP redemption data under existing practices.

3

**PARTIES**

8. TRA is a nonprofit trade association whose core responsibility is to represent the retail industry of Texas regarding regulatory and legislative issues and concerns. The TRA Food Council is an organized committee under the TRA umbrella, consisting of major multistate operators, regional supermarkets, independently-owned supermarkets, and neighborhood grocery stores. TRA membership represents over 90% of the total SNAP transactions processed in Texas and employs over 300,000 employees serving Texas customers, including SNAP participants.

9. USDA is an executive agency of the United States government and currently holds the confidential, store-level SNAP redemption data at issue in this case (the "Confidential Information"). USDA is an "agency" for purposes of the Administrative Procedure Act, 5 U.S.C. § 701(b).

**JURISDICTION AND VENUE**

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701–06; and the Trade Secrets Act, 18 U.S.C. § 1805. Judicial review of USDA's actions is permitted under the Administrative Procedure Act, 5 U.S.C. § 702. This Court has jurisdiction to issue the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C) because TRA's principal place of business is in Austin, Texas. In addition, venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action, is situated in this district. Much of the data at issue in this action relates to redemptions at stores located in this district, and the harm from disclosure of that data will be felt by retailers in this district.

**FACTUAL ALLEGATIONS**

A.      **SNAP Modernizes the Food Stamp Program**

12.     SNAP is the largest program in the domestic hunger safety net.  Like its predecessor, the federal Food Stamp Program, SNAP aims to increase the food-purchasing power of eligible low-income households and enable economically disadvantaged Americans to maintain a more nutritious diet.

13.     SNAP modernized the Food Stamp Program by replacing the prior coupon system with electronic benefit transfer ("EBT") cards.  State-issued EBT cards resemble ordinary debit cards and can be used at authorized retailers to redeem SNAP benefits for eligible food items.  In April 2018, over 40 million individuals received SNAP benefits.  More than 3.7 million of these individuals (nearly 1.6 million households) live in Texas.  Nearly half of SNAP participants are children.

14.     More than 20,000 retail stores in Texas have participated in SNAP, including traditional grocery stores (such as H-E-B, Randalls, and Kroger), discount grocery stores (such as Family Dollar and Dollar General), and superstores (such as Walmart and Target).  Statewide, SNAP accounted for $5.3 billion in food sales in 2016.  On a national level, SNAP accounts for more than 10% of all grocery retail.

15.     For many underserved communities in Texas, however, SNAP accounts for a much higher proportion of grocery purchases.  Without SNAP, some of these communities would have no local grocery store.  The loss of traditional grocery providers in low-income communities contributes to serious health issues, such as obesity and diabetes, as residents use their SNAP benefits in convenience stores or eat at fast food outlets.

**B.     The Longstanding Confidentiality of Store-Level SNAP Redemption Data**

16.     When a SNAP beneficiary uses his or her EBT card to redeem eligible food items from an authorized retailer, a third-party processor verifies and approves the transaction. These third-party processors record every SNAP transaction, and they forward that redemption data to USDA.

17.     The public has access to substantial information about government spending in the SNAP program. Anyone may view the government's aggregate SNAP expenditures at the national, state, and ZIP-code levels on the website of the U.S. Food and Nutrition Service ("FNS"), an agency of USDA.[1] In addition, information relating to the store names and locations that participate in SNAP is also publicly available.

18.     However, for decades, USDA has recognized that the public's interest in SNAP spending does not reach so far as to justify public disclosure of the number of SNAP dollars spent at every individual store in the country. Instead, USDA has always maintained the confidentiality of that highly detailed, store-level redemption data. This policy was based on USDA's interpretation of the Food and Nutrition Act of 2008, 7 U.S.C. § 2018, and its implementing regulations, 7 C.F.R. § 278.1(q).

19.     The confidentiality of SNAP store-level redemption data has been critical to protecting SNAP retailers' expectations that their voluntary participation in the program will not put them at a disadvantage in the marketplace by exposing sensitive store-level analytics to current and potential competitors.

20.     The grocery industry is highly competitive, and because average food retail margins are razor thin, retailers must rely on high sales volumes for profitability. Indeed, TRA

---

[1] To preserve the confidentiality of individual-retailer data, USDA has historically published ZIP-code level data only as to those ZIP codes where multiple retailers are operating.

members' average net profit after taxes is approximately 0.015 cents per dollar of sales. Additionally, in recent years, traditional grocery stores have faced increasing competition from large discount stores and other non-grocery retailers.

21. In competitive environments with high market saturation and low margins, like the grocery industry, current retailers and prospective market entrants go to great lengths to gain even a slight edge over the competition. Retailers rely on research firms and in-house analytics operations to create models of consumer behavior from which the retailers are able to better evaluate strategic options, including those regarding store locations and sales strategies.

22. Consumer-behavior models employ a variety of different data inputs. One of the most valuable pieces of information that a model can incorporate is a retailer's sales data, because this information will markedly improve the accuracy of the behavioral model. For example, a retailer could use its own store-by-store sales data in combination with public data or data purchased from research firms to target specific markets, identify preferred new locations, and gain market share in existing locations. Often, a retailer leverages the highly-detailed data collected through its customer loyalty program. Store-specific sales data and customer-loyalty sales data are highly confidential, closely guarded, and—importantly—unavailable to the retailer's competitors.

23. The FOIA requests at issue in this case, however, risk exposure of an unprecedented amount of competitively significant data, at a time when the market is more primed than ever to make use of that data to bludgeon traditional SNAP retailers.

C.   **The 2011 FOIA Request by the *Argus Leader***

24. On February 1, 2011, a reporter from the *Argus Leader*, a newspaper based in Sioux Falls, South Dakota, filed a FOIA request for SNAP data. For each SNAP retailer, the *Argus Leader* requested the store identifier, store name, store address, store type, and "[t]he

yearly redemption amounts, or EBT sales figures, for each store." The request covered fiscal years 2005 through 2010.

25.     On February 17, 2011, USDA responded to the *Argus Leader*'s request, releasing store names and addresses, but withholding the remaining information, including the store-level sales data. In support of its decision to withhold the data, USDA cited FOIA Exemption 3 (which incorporates the confidentiality requirements of other laws) and Exemption 4 (which protects businesses' confidential information). *See* 5 U.S.C. §§ 552(b)(3) & (b)(4). Specifically, the USDA determined that the withheld information was confidential pursuant to the Food and Nutrition Act of 2008 and applicable regulations, and thus exempt from disclosure under Exemption 3. The *Argus Leader* administratively appealed USDA's decision to withhold Store-Level Sales Figures, but that appeal was unsuccessful.

26.     On August 26, 2011, the *Argus Leader* filed suit in the United States District Court for the District of South Dakota, challenging USDA's decision to withhold the store-level sales data. On September 27, 2012, the district court granted USDA's motion for summary judgment, holding that the store-level sales data was exempt from disclosure under Exemption 3. The *Argus Leader* appealed to the United States Court of Appeals for the Eighth Circuit, which reversed. *See Argus Leader Media v. U.S. Dep't of Agric.*, 740 F.3d 1172, 1175-76 (8th Cir. 2014). The Eighth Circuit held that Exemption 3 did not apply and remanded for further proceedings.

27.     On August 4, 2014, USDA published a Request for Information ("RFI"), asking SNAP retailers specific questions, including questions relating to the commercial sensitivity of store-level sales data. Notice of the RFI was made by automated calls and by emails to SNAP retailers in August 2014. The comment period closed on September 8, 2014. After considering

8

the comments, USDA made a final agency decision that FOIA Exemption 4 barred the release of store-level sales data.

28. On May 24-25, 2016, the district court held a bench trial on the issue of whether release of the store-level sales data would cause substantial competitive harm.  Testimony by retailers, trade-association representatives, and industry experts established that disclosure of such data would harm SNAP retailers by revealing sensitive information that competitors could use in deciding how to target a participant's customers—through existing stores or through the opening of new stores.  Indeed, one expert, Bruce Kondracki, testified that the release of store-level sales data would be a "windfall" for his consumer-research company.  Such confidential store-specific sales information—akin to the information generated by a retailer's loyalty program—would allow his firm to create models that would be able to simulate real-world customer behavior with a .9 or .99 correlation.  In other words, retailers accepting SNAP would be handing their competitors critical data needed to create nearly perfect computer models.

29. On November 30, 2016, the district court ruled in favor of the *Argus Leader*.  The court held that, based on the evidence presented at trial, there was an insufficient showing that disclosure of store-level sales data would cause substantial competitive harm to SNAP participants. The district court stated that the release of this data would have minimal effect on a potential competitor's decision to expand into new locations.  According to the district court, "[t]his is because a variety of factors influence a store's decision to open a new location including: cost of real estate, location of real estate, the business's long-term financial plans and goals, and other factors."  In essence, while the district court did not disagree that store-level data was competitively significant, the district court found the competitive harm of releasing that data was attenuated by the various other factors retailers would consider in opening rival brick-and-

mortar locations—which the court assumed was the only practical way to compete using store-level data.

30.     On January 18, 2017, USDA issued a Decision Memo, stating that it had made the "decision to comply with the court ruling."  A national trade association, the Food Marketing Institute, intervened in the case for the purposes of appealing the district court's ruling.  On May 8, 2018, the Eighth Circuit affirmed, holding that the district court's factual finding of no substantial competitive harm was not clearly erroneous, based on the record that had been developed in 2014 and 2016.

**D.     USDA Announces that Online Retailers Will Now Be Able to Participate in SNAP**

31.      In January 2017, the USDA announced that it had selected several companies to participate in a pilot program through which online retailers, such as Amazon and FreshDirect, would participate in SNAP.  Although the pilot program is being initially tested outside Texas, USDA has stated that it intends to add  additional retailers and develop a nationwide online-purchasing option for SNAP participants.  The pilot program launched in 2018.

32.     The expansion of SNAP to online retailers dramatically increases the likelihood that existing SNAP retailers will suffer substantial competitive harm from the public disclosure of their historic store-level redemption data.  In the South Dakota litigation, the court's analysis was based on a program that operated only through brick-and-mortal retailers.  Recognizing the value of store-level sales information to competitor's statistical modeling, the court in South Dakota held that this advantage would be just one factor driving the decision about whether to open a new store location.  In other words, the court suggested that a competitor could use information—and thus inflict substantial competitive harm—only if the competitor opened a

competing store nearby. With the introduction of an online-only SNAP program, that structural protection has been stripped away.

33. This recent change comes at a time when online retailers represent an increasingly important segment of the grocery industry. One study, released in 2017, estimates that the proportion of U.S. households that shop online for groceries will skyrocket from 25% to over 70% within the next ten years. And online retailers are well known for their sophisticated customer analytics, increasingly powered by artificial intelligence.

34. Moreover, the courts in the South Dakota litigation analyzed the likelihood of substantial competitive injury in the context of a marketplace where all retailers were, more or less, similarly situated. Although the marketplace is always adding or dropping new stores, most of the retailers whose information is subject to release were getting access to similar information about their competitors. But that is no longer true. Because of the expansion of SNAP to online-only retailers, the release of traditional retailers' SNAP redemption data would result in unfair informational asymmetries. Online retailers will have access to years of physical stores' historic sales data, allowing them to effectively find and target traditional grocers' customers. But physical stores will have no reciprocal access to any historical data for the online competitors, as these competitors are new to the market. Moreover, since online retailers may be able to serve customers in a broad region out of a single point of distribution, they may never be releasing data with the kind of neighborhood-level specificity that traditional grocers would be releasing—forcing traditional grocers to keep subsidizing online retailers with free data without reciprocity.

35. Thus, the analysis undertaken previously by the district court and the Eighth Circuit with respect to the applicability of Exemption 4 to the SNAP Store-Level Sales

11

Information is incomplete.  That analysis was based on evidence submitted in 2014 and 2016, relating to a program that was fundamentally different than the program of today and the near future.  The competitive harm that will be caused by the release of this data *now* must be determined based on the SNAP program as it exists *now*—not as it existed in 2014 and 2016.

36.     In the two weeks following the November 30, 2016 decision by the court in South Dakota, USDA received three new FOIA requests for store-level redemption data.  One of these requests—described by USDA as a "commercial use" request rather than a news media inquiry like the *Argus Leader*'s—specifically targeted Texas retailers for years up to and including 2016.  Then, after the USDA issued its January 18, 2017 Decision Memo, the FOIA requests mushroomed.  Twenty more requests covering store-level redemption data arrived, seeking data up to and including 2018.  USDA did not notify Texas retailers of these additional requests for more current data than had been at issue in the *Argus Leader*'s case until after this suit was filed.  On information and belief, the agency decided to release current data in response to the new requests based solely on the new requests' purported similarity to the *Argus Leader*'s 2011 request, without conducting any administrative review or proceedings regarding the confidentiality or competitive sensitivity of post-2010 store-level SNAP data.

## COUNT ONE: DECLARATORY JUDGMENT

37.     TRA repeats and re-alleges the foregoing allegations as if fully set forth herein.

38.     All of the Texas retailers' store-level SNAP redemption data provided to USDA is confidential commercial or financial information because the data is confidential and because public release of such information would cause TRA members substantial and irreparable competitive harm.  As such, all of the Confidential Information at issue is exempt from disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

39. Further, USDA is prohibited by the Trade Secrets Act, 18 U.S.C. § 1905, from disclosing Texas retailers' store-level SNAP redemption data because it contains confidential commercial or financial information.

40. In addition, with respect to post-2010 data, USDA has failed to follow the agency's own administrative regulations, which require that the agency provide affected businesses with notice of a request for such information and an opportunity to comment, and make a determination about whether the requested records are exempt from disclosure. 7 C.F.R. § 1.12(a). No exception to these requirements applies here. Accordingly, USDA's release of this data would violate the Administrative Procedure Act, 5 U.S.C. § 706(2).

41. The release of Texas retailers' store-level SNAP redemption data is not in accordance with FOIA, the Administrative Procedure Act, and the Trade Secrets Act.

## COUNT TWO: INJUNCTIVE RELIEF

42. TRA repeats and re-alleges the foregoing allegations as if fully set forth herein.

43. There is a substantial likelihood that TRA will succeed on the merits in this matter.

44. Should the requested injunctive relief not be granted, USDA will release Texas retailers' store-level SNAP redemption data, and they will suffer immediate, substantial, and irreparable harm.

45. There will be no harm to USDA or to any third party from protecting Texas retailers' store-level SNAP redemption data from disclosure. TRA is not seeking to block the release of information relating to any other state, nor does it seek to block annual aggregate retailer-level SNAP redemption data, *i.e.*, the total aggregate redemptions for all of a retailer's stores.

46. Issuance of an injunction is in the public interest because it will assure compliance with FOIA, the Administrative Procedure Act, and the Trade Secrets Act.

47. All elements required to grant injunctive relief are present and TRA is entitled to such relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff TRA requests that judgment be entered in its favor and against USDA as follows:

a. A declaration and an order that Texas retailers' store-level SNAP redemption data is confidential business information, and as such, is exempt from public disclosure under the Freedom of Information Act, pursuant to 5 U.S.C. § 552(b)(4);

b. A declaration and an order that USDA is prohibited from disclosing Texas retailers' store-level SNAP redemption data by virtue of the Trade Secrets Act, 18 U.S.C. § 1905, and USDA's regulations at 7 C.F.R. Part 1, and other law, or, in the alternative, an order remanding this action to the USDA for administrative proceedings to consider whether release of this information would cause substantial competitive harm in light of the recent expansion of SNAP to online retailers;

c. Maintenance of a preliminary injunction prohibiting USDA from disclosing Texas retailers' store-level SNAP redemption data while this action is pending;

d. Upon trial, a permanent injunction prohibiting USDA from releasing the Confidential Information; and

e. Grant such further relief as the Court finds just and proper.

Respectfully submitted,

VINSON & ELKINS L.L.P.

*/s/Jason M. Powers*
Jason M. Powers
Texas Bar No. 24007867
Allison L. Fuller
Texas Bar No. 24087547
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

Jennifer S. Freel
Texas Bar No. 24051327
2801 Via Fortuna
Suite 100
Austin, TX 78746

***Attorneys for Plaintiff***
***Texas Retailers Association***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of August, 2018, a true and correct copy of the foregoing document was tendered for filing to the Clerk of the U.S. District Court for the Western District of Texas using the Court's CM/ECF system.

*/s/Jennifer S. Freel*
Jennifer S. Freel